IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THOMAS M. KLEPSKY, | ) | CASE NO. 1:04 CV 1683 |
| Plaintiff, | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| UNITED PARCEL SERVICE, INC., | ) | |
| Defendant. | ) | MEMORANDUM OPINION |

This matter is before the Court on Defendant, United Parcel Service, Inc.'s Motion for Summary Judgment. (ECF # 30). Plaintiff, Thomas Klepsky, claims that he was fired in violation of Ohio's Whistleblower's Act, O.R.C. §§ 4113.51 and 4113.52, and Ohio public policy. Defendants contend that Mr. Klepsky was terminated for dishonesty because on his medical history form he failed to disclose a history of seizures and failed to disclose that he was taking daily anti-seizure medication. For the reasons set forth below, Defendant's Motion for Summary Judgment is GRANTED.

## Summary Judgment Standard

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. Tolton v. American Biodyne, Inc., 48 F.3d 937, 941 (6th Cir. 1995) (citing Celotex, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Copeland v. Machulis, 57 F.3d 476, 479 (6th Cir. 1995) (citing Anderson, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal

issue and grant summary judgment. Anderson, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." Id. at 252. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-mover. The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." Cox v. Kentucky Dep't of Transp., 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. Id.

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred with the Ninth Circuit that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'" Wiley v. United States, 20 F.3d 222, 225-26 (6th Cir. 1994) (quoting Beyene v. Coleman Sec. Servs., Inc., 854 F.2d 1179, 1181 (9th Cir. 1988)). FED. R. CIV. P. 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment purposes be made

-3-

> on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

Wiley, 20 F.3d at 225-26 (citations omitted). However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

Id. at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." Anderson, 477 U.S. at 248. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. Id. at 249. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Id.

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250.

## Facts[1]

The basic facts in this case are not in dispute. The lawsuit stems from Mr. Klepsky's termination in January of 2004. Mr. Klepsky was hired by United Parcel Services, Inc. ("UPS") as a seasonal driver in 1994. He began full time work in 1995. (Klepsky Depo at 16, 21-22). As part of the employment application process, Mr. Klepsky was required to undergo a U.S. Department of Transportation (DOT) physical examination, and to fill out a medical history information form. The form expressly requires an applicant to "[l]ist all medications (including over-the-counter medications) used regularly or recently." (Klepsky Depo. Exhibits 16, 18).

Mr. Klepsky had a past history of seizures and was, throughout his employment with UPS, taking Dilantin, an anti-seizure medication, on a daily basis. (Klepsky Depo. at 74-77). Mr. Klepsky did not disclose either of these facts on his medical history information form. (Klepsky Depo. at 61, 62). Mr. Klepsky contends that during his original qualifying physical examination he told the doctor that he had suffered two seizures 10 or 11 years earlier. (Klepsky Depo. at 61-62). According to Mr. Klepsky, because the seizures occurred more than six months ago, the doctor said "don't even open up a can of worms," and so he did not disclose the past seizures on his form. (Klepsky Depo. at 62). There is no evidence that Mr. Klepsky advised the examining doctor that he was still taking Dilantin on a daily basis.

The information forms specifically state that "any deliberate false statement may be cause for disciplinary action up to and including termination." (Klepsky Depo. at 62-63; Klepsky Depo. Exhibits 13-18). Mr. Klepsky also signed forms noting that "inaccurate, false or missing

---

[1] The facts are viewed in the light most favorable to Mr. Klepsky, the non-moving party. Unless otherwise stated, the facts as presented have been taken from Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment and from Plaintiff's Deposition testimony.

information" may invalidate his medical certification. (Klepsky Depo. Exhibits 16, 18). A person with a history of seizures who takes anti-seizure medication is not medically qualified to drive under DOT regulations. 49 C.F.R. § 391.41(b)(8); The Advisory Criteria to 49 C.F.R. § 391.41(b)(8).

UPS became aware of Mr. Klepsky's daily use of Dilantin in November of 2003. The information was contained in records sent by Mr. Klepsky's doctor in connection with an unrelated medical leave of absence. Mr. Klepsky contends that UPS should have been aware of this information as early as August of 2002 because Dilantin was listed as one of his medications in worker's compensation records submitted to the company during that time frame. (Memorandum in Opp., at 8, 16). UPS admits that this record was in its possession but contends that because it was submitted with a request for payment, the medications listed were not reviewed or noted. (Janovics Aff., ¶¶ 2,3).

After receiving notice of Mr. Klepsky's Dilantin use, he was immediately advised that he could not drive, and UPS requested that he submit additional information from his doctor. This information was received in late January of 2004. (Schiets Aff. ¶¶ 8, 10, 11). Upon review of the records, UPS decided to terminate Mr. Klepsky for dishonesty. He was discharged on January 29, 2004. ((Schiets Aff. ¶11).

Mr. Klepsky contends that he was fired in retaliation for various complaints he made against UPS over the years. These complaints include reports made in spring of 1999 to the Ohio State Highway Patrol and to the Middleburg Heights Police alleging that a UPS supervisor had

forged his signature on a DOT application for a triples[2] permit card. (Klepsky Depo. at 122-123, 127). Mr. Klepsky also submitted several complaints internally at UPS relating to allegations that equipment was faulty; hazardous materials documents were in the wrong place in the trucks; and soft-sided trailers were not being loaded properly. There is no evidence of any such complaints being filed after fall of 2000. More than a year and a half after the last recorded complaint, Mr. Klepsky injured his rotator cuff and took a year long leave of absence which was covered by worker's compensation. (Memorandum Opp. at 15). Mr. Klepsky was fired a little over six months after he returned from his medical leave.

Mr. Klepsky grieved his discharge to the Union. The state panel upheld his termination. (Klepsky Depo. at 61, 63-64).

## Analysis

Mr. Klepsky filed suit against UPS in the Cuyahoga County Court of Common Pleas charging two counts. The first count alleged a violation of Ohio's Whistleblower's Act, O.R.C. §§ 4113.51 and 4113.52. The second count alleges wrongful discharge in violation of Ohio public policy. UPS removed the case to this federal court, claiming that Mr. Klepsky's state-law claims were preempted by the Labor Management Relations Act, 29 U.S.C. § 185.

### I. Count One - Ohio Whistleblower's Act

In order to prove a claim under the Ohio Whistleblower's Act, O.R.C. §§ 4113.51 and

---

[2] "Triples" are three-trailer rigs that are considered "long combination vehicles." Special permits must be obtained from DOT in order to drive triples on the Ohio Turnpike.

4113.52, Mr. Klepsky must show that (1) he is entitled to protection under the act; (2) he was subject to an adverse employment action; and (3) there is a causal link between his protected actions, and his termination. O.R.C. § 4113.52; see also, Chandler v. Empire Chem., 99 Ohio App. 3d 396, 650 N.E.2d 950, 953 (1994). There is no question that Mr. Klepsky's termination counts as an adverse employment action. The question is whether he was entitled to protection under the act, and whether his protected activity was causally related to his termination.

A. Protection Under the Act.

There are two means by which protection under the Whistleblower's Act may be triggered.

1. Protection under O.R.C. § 4113.52(A)(1)(a).

O.R.C. § 4113.52(A)(1)(a) applies when an employee, in the course of his employment becomes aware of a violation of state or federal statute, or any ordinance or regulation of a political subdivision that the employer has the authority to correct. Further, the employee must have a reasonable belief that the violation is either a felony or a criminal offense likely to cause imminent risk of physical harm or a hazard to public health or safety. Contreras v. Ferro Corp., 73 Ohio St. 3d 244, 652 N.E. 2d 940, 943 (Ohio 1995).

If the above criteria are met, the employee must then strictly follow the procedural requirements of the statute in order to receive protection. Under the Act, the employee is required to:

> orally notify his or her supervisor or other responsible officer of the employer of the violation *and* subsequently file with that person a written report that provides sufficient detail to identify and describe the violation. *If* these requirements have been satisfied *and* the employer does not correct the violation . . . after the oral notification or the receipt of the written report, *whichever is earlier*, the employee

-8-

*may* then file a written report with the prosecuting attorney . . . where the violation occurred or with some other appropriate person specified in R.C. § 4113.52(A)(1)(a).

Contreras, 652 N.E. 2d at 943 (emphasis in the original). Under O.R.C. § 4113.52 (A)(1)(a), protection is afforded only when an employee has acted in strict compliance with the statute's requirements. Contreras, 652 N.E. 2d at syllabus.

Mr. Klepsky did not satisfy the requirements of O.R.C. § 4113.52 (A)(1)(a), and therefore is not entitled to protection under this provision of the Whistleblower's Act. In so far as Mr. Klepsky status as a whistleblower might have stemmed from his charges that a supervisor forged his signature on a DOT permit application card, his claim must fail.[3] Mr. Klepsky did not notify his supervisor orally or in writing prior to filing a complaint with the authorities, as required by the statute. (Klepsky Depo. At 121-24, 127-28, and 132-33). The Ohio Supreme Court has unequivocally determined that no protection is afforded under the Act when the employer is not given prior notification of the alleged violation.

> Clearly, the provisions of R.C. 4113.52(A)(1) contemplate that the employer shall be given the opportunity to correct the violation. The statute mandates that the employer be informed of the violation both orally and in writing. An employee who fails to provide the employer with the required oral notification and written report is not entitled to statutory protection for reporting information to outside authorities.

Contreras, 652 N.E. 2d at 944.

In so far as Mr. Klepsky's status as a whistleblower is alleged to have stemmed from his

---

[3] It appears that Mr. Klepsky has recognized the deficiencies in this argument and has abandoned this claim. His Memorandum in Opposition to Defendant's Motion for Summary Judgment does not defend this claim, but rather offers an alternative theory of protection involving only the safety issue complaints, which will be addressed later in this opinion.

alleged safety complaints,[4] his claim for protection fails because he has not claimed that he had any reasonable belief that the safety issues he complained about involved any violation of criminal law, as required by the statute. (Klepsky Depo. at 158, 215). Mr. Klepsky's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment does reference several Ohio Revised Code, and Code of Federal Regulation sections, in an attempt to have this Court infer that criminal violations were at issue in the safety complaints. Nothing in his brief, or in this Court's review of these cited sections, however, connect Mr. Klepsky's complaints to those cited statutes and regulations. Three of the cited sections are merely definitions which do not regulate any acts or conditions related to Mr. Klepsky's complaints; a fourth citation refers to a statute that does not exist; and none of the cited statutes or regulations appears to apply to the issues about which Mr. Klepsky complained.

Mr. Klepsky's complaints about dashboard lights did not affect the safety of the vehicle. The speedometer and tachometer were lit at all times, only the light for the heater, defroster and fan were occasionally inoperable. (Klepsky Depo. at 176). To this Court's knowledge, there is no criminal liability for such a defect; certainly the Plaintiff has not cited to any statute or ordinance that would impose that kind of liability. Further, Mr. Klepsky's concerns about the hand valve did not implicate any criminal laws. Mr. Klepsky complained that the hand brakes weren't spring loaded. (Klepsky Depo. at 155-158). This did not affect their ability to brake the vehicle and there are no identified policies or regulations that require them to be spring loaded. (Silter Decl. ¶ 5). The alleged misplacement of hazardous material information pouches within

---

[4] These included allegations that equipment was faulty; hazardous materials documents were in the wrong place in the trucks; and soft-sided trailers were not being loaded properly.

the cab also fails to carry with it any criminal liability. None of Mr. Klepsky's complaints appear to have involved the violation of any criminal law, felony or otherwise, and Mr. Klepsky does not contend that he had a reasonable belief to the contrary at the time he made the complaints. Therefore, he is not eligible for protection from the Whistleblower's Act for reports made on these issues.

2. Protection under O.R.C. § 4113.52(A)(3).

O.R.C. § 4113.52(A)(3) applies when an employee becomes aware, through the course of his employment, that a <u>co-worker</u> has violated a state or federal statute, any ordinance or regulation of a political subdivision, or any work rule or company policy of the employee's employer, and when the employee has a reasonable belief that such a violation is a felony or is a criminal offense likely to cause an imminent risk of physical harm to person or a hazard to public health or safety. If these criteria are met, in order to receive protection from the Whistleblower's Act, the employee must notify his supervisor or other responsible officer of the violation and subsequently file a written report providing sufficient detail to identify and describe the violation.

Mr. Klepsky has not attributed any of the safety issues he complained about to a specific co-worker's violation of a statute, ordinance, regulation, or company policy. The only co-worker who has been identified as having allegedly violated any law was Mr. Godbolt. Mr. Klepsky alleges that Mr. Godbold forged his signature on a DOT permit application card. As noted earlier, however, Mr. Klepsky did not notify his employer orally and/or in writing of this alleged violation. Therefore he has not strictly complied with the requirements of R.C. § 4113.52(A)(3), and he is not entitled to protection under the Whistleblower's Act.

Even if Mr. Klepsky has identified specific co-workers that he believed had violated UPS

-11-

policy with regard to the other saftey concerns he raised, this would not be sufficient to entitle him to protection under the Act. As discussed above, Mr. Klepsky had no reasonable belief at the time his complaints were filed that any of the so called safety issues were violations of any criminal law. Therefore the criteria for protection under the Whistleblower's Act was not satisfied.

B. <u>Causal Link Between Protected Activity and Adverse Employment Action</u>.

Even if Mr. Klepsky had been protected by the Whistleblower's Act, he has offered no evidence showing a causal link between his allegedly protected activities and his discharge. The most recent of the alleged protected activities took place in November of 2000; he was discharged in January of 2004. His discharge occurred nearly four years after the first and more than three years after the last alleged protected activity. Defendants have cited several cases which hold that causation is not inferred when the protected activities and the adverse action are separated by a matter of several months, let alone several years. See, e.g., Cooper v. City of North Olmsted, 795 F.2d 1265, 1272 (6th Cir. 1986). Plaintiff has pointed to no law that would support an inference of causation when the alleged protected activities took place years before the adverse action.

Mr. Klepsky's argues that even after his complaints has ceased, certain supervisors threatened to fire him because of his prior complaints. This argument also fails to create sufficient circumstantial evidence of causation. The supervisors whom he claims made such threats did so years before his actual termination, and there is absolutely no evidence that those supervisors had any role or input with regard to his termination. Mr. Klepsky offers no other evidence, either direct or circumstantial, that his termination was caused by his earlier

complaints.

If the plaintiff presents evidence of a prima facie violation under the Whistleblower's Act, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the termination. If a legitimate non-retaliatory justification for termination is provided, the burden shifts back to the employee to prove that the articulated reason is a mere pretext for retaliation. See, e.g., Akers v. Alvey, 338 F.3d 491, 497 (6th Cir. 2003); Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1084 (6th Cir. 1994).

Mr. Klepsky has clearly not satisfied the three part test for establishing a prima facie violation under the Whistleblower's Act. However, even if he had, there is no evidence that would allow a jury to conclude that the legitimate non-retaliatory justification UPS has provided for terminating Mr. Klepsky is a mere pretext for retaliation. UPS contends that it terminated Mr. Klepsky for dishonesty for misrepresenting or failing to report his current and prior medical conditions on five separate medical history forms.

Mr. Klepsky contends that the reasons articulated by UPS are mere pretext because (1) he did not intend to deceive UPS; (2) he was not discharged immediately, and (3) a management employee who was dishonest was not terminated; and (4) a UPS employee told him not to report his past seizures. None of these arguments can support a finding of pretext. First, Mr. Klepsky's intent is irrelevant. He read and understood the medical history forms, and he knew that he was taking Dilantin on a daily basis. Nonetheless he did not report his use of this anti-seizure medication. Mr. Klepsky signed the information forms which specifically state that "any deliberate false statement may be cause for disciplinary action up to and including termination." (Klepsky Depo. at 62-63; Klepsky Depo. Exhibits 13-18). Mr. Klepsky also signed forms noting

-13-

that "inaccurate, false or missing information" may invalidate his medical certification. (Klepsky Depo. Exhibits 16, 18).

Second, Mr. Klepsky was suspended from driving immediately upon the discovery that he was taking daily anti-seizure medication. His discharge followed just over two months later, when an investigation showed that Mr. Klepsky's had not disclosed his prior seizures or current use of anti-seizure medication on any of the five medical history forms he filled out over the course of nine years of employment. His termination for this reason was both reasonable and timely.

Third, the fact that Mr. Godsend was not terminated for his alleged "forgery" of signatures on DOT applications is not evidence of pretext in Mr. Klepsky's case. Mr. Godsend did not lie or leave out information on forms submitted to his employer, as did Mr. Klepsky. His alleged digressions did not affect his ability to legally perform his job, as did Mr. Klepsky's. Further, there is no evidence that Mr. Godsend repeated his digressions several times over the course of his employment, as did Mr. Klepsky. Mr. Godsend was not terminated, but he did suffer adverse employment consequences for his digressions through the loss of his financial bonuses. However, his situation is not sufficiently analogous to Mr. Klepsky's to provide any evidence of pretext.

Finally, Mr. Klepsky contends that an examining doctor - hired by UPS - told him not to report his past seizures. He does not, however, allege that anyone told him not to report his daily use of Dilantin. The failure to report the Dilantin use is sufficient to support his termination whether or not his past seizures were disclosed. Further, the doctor was not a UPS employee. More importantly, an employee is not justified in lying on his employment documentation just

because someone told him he could get away with it. Regardless of what the doctor told him, Mr. Klepsky should have filled out his medical history form fully and truthfully. None of Mr. Klepsky's arguments provide any evidence or support for a finding that the reason UPS has given for his termination is mere pretext for a retaliatory action.

II. Count Two - Public Policy

The Ohio Supreme Court has held that the public policy exception does not apply to an employee who has the protection of a collective bargaining agreement. Haynes v. Cincinnati Zoological Society, 49 Ohio St. 3d 228, 551 N.E.2d 981 (1990). This position has been slightly confused by that Court's ruling in Coolidge v. Riverdale Loc. School Dist., 100 Ohio St. 3d 141, 797 N.E.2d 61 (2003), wherein the Court held that O.R.C. § 3319.11, which protects teachers against discharge without good cause, could not be construed to give teachers less protection against wrongful discharge that an at-will employee is afforded under common law. The Court held that discharging a teacher for excess absences caused by her temporary total disability under worker's compensation laws, contravened Ohio public policy.

Plaintiff argues that Coolidge effectively overruled the previous holding in Haynes. Plaintiff cites one unreported case in support of this contention. Several Ohio courts, however, have disagreed with this argument. Defendant cites several reported cases, decided after Coolidge, that continue to apply the Haynes directive and refuse to allow employees covered by a collective bargaining agreement to bring public policy claims for wrongful discharge. As a federal court applying state law, this Court must rule as the Ohio courts would rule. Therefore, this Court is bound to follow the reported cases cited by Defendant on this issue. Further, these

-15-

Courts have correctly interpreted Haynes, and have appropriately distinguished <u>Coolidge</u>. This case does not involve the interpretation of a statute prohibiting Mr. Klepsky from being terminated without good cause, as did the <u>Coolidge</u> case. Mr. Klepsky was subject to a collective bargaining agreement. He utilized the protections of that agreement by filing a grievance over his discharge and the state panel upheld his termination.

Even if a public policy claim could be made, Defendants would be entitled to summary judgment on the claim. In order to support a claim for discharge in violation of public policy, a plaintiff must show (1) the existence of a clear public policy; (2) dismissal under circumstances that would jeopardize that policy; (3) his dismissal was related to the public policy; and (4) that the employer lacked an overriding business justification for its action.

As set forth in the discussion of the Whistleblower's Act *supra*, Mr. Klepsky did not identify any state or federal laws governing workplace safety that were implicated by his complaints; there is no evidence that his discharge was related to his safety complaints; and there is no evidence that the justification UPS gave for his discharge was a pretext for retaliatory actions. Further, insofar as the public policy Mr. Klepsky claims is based on the same public policy as the Whistleblower Act, his claim cannot stand. Ohio federal and state courts have held that when the claim upon which he public policy is based fails, so must the public policy claim. See, e.g., <u>Covucci v. Service Merchandise Co., Inc.</u>, 115 Fed. Appx. 797, 800-01 (6th Cir. 2004); <u>Lewis v. Fairview Hospital</u>, 156 Ohio App.3d 387, 806 N.E.2d 185, 189 (2004). Mr. Klepsky has not provided any evidence to show the existence of a clear public policy; that his discharge was related to or jeopardized that policy, or that UPS lacked an overriding justification for his termination. Therefore, a public policy claim cannot stand.

## Conclusion

For the reasons set forth above, Defendant's motion for summary judgment is hereby GRANTED, and this case is dismissed with prejudice, each party to bear its own costs.

IT IS SO ORDERED.

/s/ Donald C. Nugent
DONALD C. NUGENT
United States District Judge

DATED: September 27, 2005